**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------X   Index No.
VAHID SAMII,

                              Plaintiff,

            -against-                         **COMPLAINT**

GOSIMPLEGROUP LLC, ACCREDITED BUSINESS
SOLUTIONS INC., and MARK HANNA, *Individually*,

                              Defendants.
------------------------------------------------------------------------X

      Plaintiff VAHID SAMII, by and through his attorneys, PHILLIPS & ASSOCIATES, Attorneys at Law, PLLC, hereby complains of Defendants upon information and belief as follows:

**NATURE OF THE CASE**

1. Plaintiff brings this action against Defendants pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and the New York State Labor Law, Articles 6 & 19 ("NYLL") for **failure and refusal to pay Plaintiff earned wages, making an unlawful deduction, and failure to pay minimum wage owed for work performed.** As a result of Defendants' violations of the FLSA and NYLL, Plaintiff is entitled to: (a) the full amount of non-payment/ deduction, (b) attorneys' fees and costs, (c) prejudgment interest, and (d) an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due.

2. Plaintiff also complains pursuant to the Wage Theft Prevention Act, New York Labor Law § 195 *et seq.* and seeks to redress the damages he has suffered as a result of Defendants' **failure to give him written notice of wage rates**, including, inter alia, his regular rate of pay, how he was to be paid: by the hour, shift, day, commission, etc., his

regular payday, and/or the official name of the employer and other names used for business.

## JURISDICTION AND VENUE

3. Jurisdiction of this Court is proper under § 216(b) of the FLSA (29 U.S.C. § 216 (b)), §§ 1331 and 1343.

4. The Court has supplemental jurisdiction over the plaintiff's claims brought under state law pursuant to 28 U.S.C. § 1367.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as it is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

## PARTIES

6. At all times relevant, Plaintiff VAHID SAMII ("Plaintiff") (aka Victor Samii) was and is a resident of the State of New York and Bronx County.

7. At all times relevant, Defendant GOSIMPLEGROUP LLC ("GOSIMPLE") was and is a foreign limited liability company, duly existing pursuant to, and by virtue of, the laws of the State of Delaware.

8. At all times relevant, Defendant GOSIMPLE was and is a foreign limited liability company which lawfully conducted/ conducts business in the State of New York and owned, operated, and/or maintained an office located at 24-11 41st Avenue, 2nd floor, Long Island City, New York 11101.

9. Upon information and belief, there were/ are numerous trade names under which Defendant GOSIMPLE operated/ operates, including but not limited to, "Go Accredited," "Accredited Merchant Capital," and "ABS Financing." Upon further information and belief, these three entities—individually and collectively—currently own, operate, and/or

maintain an office located at 535 Broadhollow Road, Suite B44, Melville, New York 11747.

10. At all times relevant, Defendant ACCREDITED BUSINESS SOLUTIONS INC. ("ACCREDITED") was and is a domestic business corporation, duly existing pursuant to, and by virtue of, the laws of the State of New York, with its principal place of business located at 131 Sunnyside Blvd., Ste. 108, Plainview, New York 11803.

11. At all times relevant, Plaintiff was an employee of Defendant GOSIMPLE (and the trade names under which it operated), as well as Defendant ACCREDITED.

12. At all times relevant, Defendant MARK HANNA ("HANNA") was and is an owner and/or principal of both Defendant GOSIMPLE (and the trade names under which it operated) and Defendant ACCREDITED, as well as an executive holding the position of President and CEO of each.

13. At all times relevant, Defendant HANNA was Plaintiff's supervisor and had the power to hire and fire Plaintiff (and in fact did hire Plaintiff), supervise him and control his conditions of employment and daily work schedule, determine Plaintiff's rate and method of payment, and maintain employment records of Plaintiff.

14. Defendants GOSIMPLE, ACCREDITED, and HANNA shall be herein referred to collectively as "Defendants."

15. The FLSA defines "employer" to include any person acting directly or indirectly in the interest of an employer in relation to an employee, and an employee is anyone who is suffered or permitted to work. As a result, Defendants are liable, jointly and severably, as "employers" under the FLSA.

16. Upon information and belief, Defendants GOSIMPLE and ACCREDITED (individually

and together) grossed more than $500,000.00 in the past fiscal year.

## MATERIAL FACTS

17. In or around January 2015, Plaintiff began working for Defendant GOSIMPLE (and the trade names under which it operated—notably, Go Accredited). Specifically, at all times relevant, Plaintiff was a team leader who managed a group of people who facilitated the process of business owners obtaining business loans from lenders. Namely, Plaintiff communicated with both the business owner and lender and reviewed materials for the purpose of the business owner being approved for a business loan and obtainment of funds regarding same. Plaintiff's main duties and responsibilities regarded facilitating business owners in obtaining loans.

18. Sometime in 2017, the trade name under which Plaintiff worked changed to Accredited Merchant Capital. Upon information and belief, Accredited Merchant Capital is affiliated with, and/or wholly owned by Defendant GOSIMPLE. Upon further information and belief, sometime in or around October 2017, Accredited Merchant Capital merged with Defendant ACCREDITED, and thus, Defendants GOSIMPLE and ACCREDITED (and the affiliated companies who paid Plaintiff's wages) were joint employers of Plaintiff.

19. Insofar as is relevant, in 2017, Plaintiff was required to, and in fact did, report each and every day to Defendants' office located at 535 Broadhollow Road, Suite B44, Melville, New York 11747. This changed in October 2017, and from October 2017 until February 2018, Plaintiff reported each and every day to Defendants' office located at 131 Sunnyside Blvd., Ste. 108, Plainview, New York, 11803. During 2017 and into 2018, Plaintiff's ordinary work hours were from 9:30 AM to 5:00 PM Monday through Friday,

for a total of approximately 37.5 hours worked per week.

20. Significantly, part of Plaintiff's total compensation came as a W-2 employee, of which an IRS Form W-2 was issued by Defendant GOSIMPLE. Also, Defendant HANNA routinely directed Plaintiff's daily work activities, including, telling Plaintiff which lenders to use when facilitating deals.  Additionally, Plaintiff was required to interview people who Plaintiff wanted to bring on as part of his team, however, Defendant HANNA had the final say and control over who ultimately was hired (and fired for that matter). Further, the companies for which Plaintiff was employed provided Plaintiff with the phones and computers for performing work, which were located at the offices in Melville and Plainview, respectively.  Defendant HANNA had the power to (and did) assign projects and duties to Plaintiff and others, which they were required to perform.  As such, Plaintiff is an employee of Defendants.

21. For Plaintiff's work, he was paid a salary of $1,250.00 per week ($65,000.00 per year) as well as commission for a business owner successfully obtaining a loan.  The percentage of commission paid to Plaintiff was based upon many different factors, including, inter alia, from where the client originated, as well as the amount of the loan obtained. However, despite Plaintiff earning a significant percentage of his wages via earned commissions, Defendants never provided him, in writing, with a notice or agreement which outlined: a description of how wages, commissions, and all other monies earned and payable were calculated, how often the employee will be paid, and/or the frequency of reconciliation.

22. During Plaintiff's tenure with Defendant GOSIMPLE, he was always paid wages earned by his boss Defendant HANNA via wire transfers.  These wire transfers were made by

Defendant HANNA himself from Defendant GOSIMPLE, or other entities which were affiliated with Defendant GOSIMPLE (including, but not limited to, a company named Pine Acre Holdings).

23. Insofar as is relevant, in or around the beginning of April 2017, Defendants ceased paying Plaintiff a salary, and he was only paid percentages of commissions. However, this change in Plaintiff's compensation structure was neither put in writing as is mandated under NYLL § 191(1)(c), nor was any adjustment reduced to a written agreement (much less one signed by both the employer(s) and employee). Thus, Plaintiff is owed, at minimum, the statutory minimum wage, for the period of April 2017 until Plaintiff ceased working for Defendants in February 2018 (as will be discussed infra).

24. Notably, as part of Plaintiff's employment with Defendants, he maintained his commissions on Excel spreadsheets with, inter alia, the amounts of each commission earned for successful completion of projects listed. Specifically, with respect to the periods relevant for this matter, Defendant HANNA paid Plaintiff portions of commissions via wire transfers periodically over a course of many months. In other words, Plaintiff did not receive 100% of the earned commission on a completed project paid out all at once, but rather, he was paid out incrementally over a course of months until the earned commission was paid off completely. This was the protocol for all commissions paid to Plaintiff by Defendants (despite it not being in writing as is mandated under the New York Labor Law).

25. Defendants paid Plaintiff all commissions owed for work performed from 2015 until approximately September 2017. Beginning in September 2017 and continuing through January 2018, Defendants paid Plaintiff certain portions of commissions earned per the

6

protocol as discussed above. However, around this time, Plaintiff noticed that Defendants had not paid one hundred percent of the funds owed for commissions earned for projects completed in September, October, November, and December (all in 2017), as well as in January 2018.

26. Thus, on February 13, 2018, Plaintiff emailed Defendant HANNA inquiring as to when he would be receiving full payment for the funds owed for earned commissions. Following a few emails back and forth between Plaintiff and Defendant HANNA regarding how much Plaintiff was owed, Defendant HANNA emailed Plaintiff acknowledging that he owed Plaintiff $12,500.00 in earned commissions (i.e., that the total amount owed is "12.5k"). Specifically, this email was as follows:



27. Notably, the term "ach" is an abbreviation for the term "Automated Clearing House" and was used by the parties as a shortened term for a way to send to money (in this instance, via what is essentially a wire transfer). Despite Defendant HANNA stating in this February 13, 2018 email that he'd "[s]end another ach Friday [February 16, 2018]" (i.e., that he'd make another wire transfer), he never did.

28. Around that same time, an earned commission for a completed project (i.e., the project regarded a business which went by the name of Vignaioli) in the amount of $900.00 became due and owed to Plaintiff by Defendants.

29. Thus, on or around February 20, 2018 (after the Friday had passed that Defendant HANNA had promised that a payment to Plaintiff would be made, which never occurred), Plaintiff text-messaged Defendant HANNA inquiring about when the first wire transfer (i.e., the first ach) would be made. The following text message exchange occurred (texts from Plaintiff on right, text from Defendant HANNA on left):



> Wed, Mar 21, 8:35 PM
>
> I gave you 3 years Mark. And now I can't even get a response from you. This is why I asked you to put some thing in writing about what was still due. Not because I was trying to be "disrespectful" but just to give myself some sort of assurance that it would still be paid. It's been 6 weeks and nothing.
>
> Delivered

30. Despite the text messages exchanged between Plaintiff and Defendant HANNA over the course of one month from February 20, 2018 to March 21, 2018, Defendant HANNA has neither responded, nor paid Plaintiff the earned commissions owed (which total $13,400.00). <u>Accordingly, Defendants owe Plaintiff $13,400.00 in earned commissions.</u>

31. Additionally, in or around the late summer/ early fall of 2017, Defendant HANNA paid a deductible on a legal matter in which Defendants became involved. Defendant HANNA nevertheless paid a deductible through Defendants' insurance carrier and rolled over certain portions of that deductible onto employees, Plaintiff included. Specifically, Defendant HANNA, without Plaintiff's authorization or approval, deducted $1,600.00 from earned commissions owed to Plaintiff. When Plaintiff inquired about this, Defendant HANNA informed him these funds deducted and kept by management were his share of the deductible paid by Defendants with respect to the legal matter.

32. This deduction was unlawful under NYLL § 193, in that it was not made in accordance with any provision of any law or rule or regulation, nor was written notice provided to the employee. Further, even if the afore-mentioned circumstances had existed, such deduction was not authorized in writing by the employee. <u>Accordingly, Plaintiff is entitled to remuneration in the amount of $1,600.00 for this unlawful deduction.</u>

33. Plaintiff's last day of work was February 19, 2018. He ceased working for Defendants as

of that day.

34. Nevertheless, Plaintiff is owed minimum wage for the period of April 1, 2017 through February 19, 2018, which is a period of approximately 46 weeks ("the 46-week period"). As discussed above, in early April 2017, without reason or written notice, Defendants ceased paying Plaintiff a salary and only paid him earned commissions. As such, he is owed minimum wage for all hours worked during this 46-week period.

35. The relevant minimum wage in effect during the 46-week period for employees (such as Plaintiff) who worked on Long Island was $10.00 per hour in 2017 until December 31, 2017, when it was increased to $11.00, and stayed at that rate for the entirety of 2018 (until December 31, 2018 when it is scheduled to increase again). As such, for the first 39 weeks of the 46-week period (i.e., from April 1, 2017 through December 31, 2017), Plaintiff is owed $10.00 for each hour worked, and for the remaining 7 weeks of the 46-week period (i.e., from January 1, 2018 through February 19, 2018), Plaintiff is owed $11.00 for each hour worked.

36. <u>Accordingly, Plaintiff is owed $17,512.50 ($14,625.00 ($10.00/hr. x 37.5 hrs./wk. x 39 wks.) + $2,887.50 ($11.00/hr. x 37.5 hrs./wk. x 7 wks.)) in earned minimum wage for work performed during the 46-week period.</u>

37. Lastly, following the enactment of the Wage Theft Prevention Act, an employer is required to provide an employee with written notice regarding: his regular rate of pay, overtime rate of pay, how he was to be paid: by the hour, shift, day, week, commission, etc., his "regular payday," the official name of the employer and any other names used for business, the address and phone number of the employer's main office or principal location, as well as any deductions to the employee's salary which will be made by the

employer.

38. Defendants did not provide Plaintiff with any written notice to Plaintiff regarding, inter alia, his regular rate of pay or deductions to be made, throughout the entirety of his employment with Defendants.  Because of this, Plaintiff is entitled to recover $50.00 for each work day that the violations occurred (capped at $5,000.00).  *See* NYLL § 198. <u>Accordingly, because Plaintiff worked for Defendants for more than 100 days during his employment, he is entitled to the statutory maximum of $5,000.00.</u>

39. **Based on the foregoing, Defendants owe Plaintiff $37,512.50 ($13,400.00 + $1,600.00 + $17,512.50 + $5,000.00).**

40. Defendants' failure to pay Plaintiff his proper earned wages required by law was willful.  Also, Defendants' failure to give Plaintiff proper notice pursuant to the Wage Theft Prevention Act was willful.

41. Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.  As such, Plaintiff demands liquidated damages against all Defendants, jointly and severally. *See* FLSA 29 U.S.C. § 216(b); NYLL § 198.

42. Plaintiff also seeks payment of attorneys' fees and costs. *See* FLSA 29 U.S.C. § 216(b); NYLL § 198(4).

**AS A FIRST CAUSE OF ACTION
VIOLATION OF THE NEW YORK LABOR LAW
<u>FAILURE TO PAY EARNED WAGES</u>**

43. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

44. Plaintiff's earned commissions constitute "wages" within the meaning of NYLL § 190(1).

45. Defendants, in failing to pay Plaintiff for work performed, have violated the NYLL, including, inter alia, Article 6 and Section 191.

46. As a consequence, under NYLL § 198, Plaintiff is entitled to: (a) the full amount of underpayment, (b) attorneys' fees and costs, (c) prejudgment interest, and (d) an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due.

## AS A SECOND CAUSE OF ACTION
## VIOLATIONS OF THE FAIR LABOR STANDARDS ACT
## MINIMUM WAGE

47. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

48. Defendants willfully employed Plaintiff in the aforementioned enterprise and failed to compensate Plaintiff at the required minimum hourly rate during certain periods of his employment.

49. Defendants' failure to pay Plaintiff the mandated minimum hourly pay in accordance with the Act was a direct violation of the Act, specifically 29 U.S.C. § 206.

50. Defendants' failure to pay proper minimum wages for each hour worked was willful within the meaning of 29 U.S.C. § 255.

51. Defendants' failure to comply with the FLSA caused Plaintiff to suffer loss of wages.

## AS A THIRD CAUSE OF ACTION
## VIOLATION OF NEW YORK LABOR LAW § 652(1)
## MINIMUM WAGE

52. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

53. Plaintiff was an employee of Defendants within the meaning of New York Labor Law.

54. Defendants failed to pay Plaintiff the required minimum hourly wage rate for one hour of work during certain periods of his employment.

55. Defendants violated Plaintiff's right to minimum wage pay under § 652(1); New York Labor Law, Article 19.

56. Defendants also violated New York's Minimum Wage Order of 12 NYCRR Part No. 142.

57. On account of such violations, Defendants are liable to Plaintiff for actual, statutory and liquidated damages.

58. Defendants' actions were willful.

59. Defendants' failure to comply with the New York State Labor Law and New York's Minimum Wage Order caused Plaintiff to suffer loss of wages.

## AS A FOURTH CAUSE OF ACTION
## UNLAWFUL DEDUCTION FROM WAGES

60. Plaintiff repeats and realleges each and every paragraph above as if said paragraph was more fully set forth herein at length.

61. Defendants have made an unlawful deduction from the wages of Plaintiff.

62. The deduction made from the wages of Plaintiff was not authorized or required by law.

63. The deduction made from the wages of Plaintiff was not expressly authorized in writing by Plaintiff, and was not for the benefit of Plaintiff.

64. Through their knowing and/or intentional efforts to permit unauthorized deductions from the wages of Plaintiff, Defendants have violated NYLL, Article 6, section 193, *et seq.*, and the supporting New York State Department of Labor Regulations.

65. Due to Defendants' willful violations of the NYLL, Plaintiff is entitled to recover from Defendants the amounts of any unlawful deductions, liquidated damages as provided for

by the NYLL, reasonable attorneys' fees, costs, and pre- and post-judgment interest.

## AS A FIFTH CAUSE OF ACTION
## VIOLATIONS OF THE WAGE THEFT PREVENTION ACT

66. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

67. Defendants failed to give Plaintiff written notice regarding: his regular rate of pay, overtime rate of pay, how he was to be paid, his "regular payday," the official name of the employer and any other names used for business, the address and phone number of the employer's main office or principal location, or, deductions taken from wages, in violation of NYLL § 195.

68. As this occurred for the entirety of Plaintiff's employment, he is entitled to the maximum amount available under the law.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by the FLSA and NYLL by failing to pay Plaintiff earned wages, making an unlawful deduction, and by failing to give proper notice pursuant to the Wage Theft Prevention Act;

B. Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendants' unlawful employment practices and to otherwise make him whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff liquidated damages as a result of Defendants' willful violations of law;

D. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

E. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

14

Dated: New York, New York
       June 11, 2018

                            **LAW OFFICE OF ROBIN E. GROSS**

By: _____
     Casimir Wolnowski, of counsel
     *Attorneys for Plaintiff*
     73 5th Avenue, Suite 2A
     New York, NY 10003
     Ph: (718) 858-0917
     Fax: (917) 591-2890
     Email: casey@cjwfirm.com